## A. VALLE *v*. THE STATE.

1. RIGHT OF REPRESENTATION BY COUNSEL. — Defendant, having been found guilty of horse-theft, filed under oath a motion for a new trial, wherein he set forth that he was a poor and ignorant Mexican, unable to understand the proceedings of the court, except through an interpreter; that he was brought to trial the day after he was indicted, and when asked if he had employed counsel, replied that he had sent for the means of doing so; that, being then asked if he was ready for trial, he assented, not knowing nor being informed of his right to two days' previous service of the indictment; and that he was not informed of his right to address the jury in his own behalf, or of any of his rights at the trial. These allegations were not controverted by the State or her representative, and in some respects are corroborated by the record. *Held*, that the accused should not have been forced to trial without aid of counsel, and in ignorance of his legal right, and that his motion for a new trial should have been sustained.

2. SAME. — See the opinion *in extenso* for a collocation and consideration of rights guaranteed by the Constitution to all persons accused of felony, and especially for a discussion of their right to be represented by counsel.

APPEAL from the District Court of Webb. Tried below before the Hon. J. C. RUSSELL.

The matters involved in the ruling are disclosed in the opinion.   A term of two years in the penitentiary was the punishment assessed against the appellant.

No brief for the appellant.

*W. B. Dunham*, for the State.

WINKLER, J.   The appellant, defendant below, having been convicted of theft of horses belonging to one William Adams, and his punishment assessed at five years' confinement in the penitentiary, filed under oath a motion for a new trial, which was overruled, and the action of the court below on the motion for a new trial is assigned as error.

It is set out in the motion for a new trial that the defendant is a poor, ignorant Mexican, who did not understand the proceedings of the court, except through an interpreter ; that the indictment against him was filed on April 13, 1880, and was served the same day, at five o'clock P. M. ; that he was brought out of jail on the next day, April 14, 1880, at two o'clock P. M., when his case was called, and he was then asked if he had any counsel, to which he replied that his brother had gone to the Nueces to obtain money to procure the same ; that he was then asked if he was ready for trial, to which he answered, " Yes," not knowing of his right to two days' service of a copy of the indictment in which to prepare and fix his pleadings ; that he would certainly not have announced ready for trial had he been aware of this right, because before the expiration of the two days he would have been able to procure counsel, as he did ; and that he did not know of his right to address the jury in his own behalf, believing, in his ignorance, that without counsel he had no right to do so, and that, having no counsel, and not being informed by the court, he had no means of knowing what his rights were in the premises.   The motion also states that the verdict was contrary to the evidence, there being no evidence to show any criminal intent on the part of the de-

fendant in taking the horses, and that the finding of the jury is contrary to law.

The ignorance of the defendant's rights under the law, as set forth in the motion for a new trial, where the subject appears for the first time, is the principal question presented by the record for consideration here. This is to some extent a novel one, and one which has not, that we are aware of, been precisely adjudicated by the courts of last resort in Texas. It therefore becomes necessary that we take into consideration the several provisions of our Codes, and also the provisions of the Constitution, which bear upon the subject, as well as the lights afforded by the general principles of law and adjudications of the courts which are deemed sufficient to afford a safe rule for our guidance in determining the merits of the present appeal and the right of the defendant to a new trial on the grounds set out in the record, and as therein stated, and under such rules as will apply as well to this as to other similar cases which may arise hereafter. In the performance of this duty, we regret, as is often the case, that we have not the aid of counsel, or any reference to authorities, to guide our investigations, there being no appearance here of counsel or brief for the appellant.

Some of the facts stated in the motion for a new trial are borne out by the record, — as, for instance, that the indictment was returned into court on April 13, 1880, and that the defendant was brought to trial on the next day, — and, perhaps negatively, that an interpreter was appointed for him, and that he was tried without counsel to represent him. By the Constitution of the State, certain rights are guaranteed to one accused of crime, in all criminal prosecutions; among other things, he is entitled to a speedy public trial by an impartial jury. He shall have the right to demand the nature and cause of the action against him, and to have a copy thereof, and he shall also have the right of being heard by himself or counsel, or both. And no per-

son shall be held to answer for a criminal offence unless on indictment of a grand jury, except in cases in which the punishment is by fine, or imprisonment otherwise than in the penitentiary, in cases of impeachment, and in cases arising in the army or navy, or in the militia when in actual service, in time of war or public danger. Bill of Rights, sect. 10. These constitutional guarantees, being excepted out of the general powers of government (Id., sect. 29), are beyond legislative control, and any law contrary thereto would be absolutely void. Art. 1, sect. 29. Now, whilst these rights are guaranteed by the Constitution, and are placed beyond the control of the law-making power of the State, and are binding as well upon the executive and judicial departments of the government, that instrument is silent as to how these rights are to be asserted; and, in the absence of constitutional direction, the subject is of necessity remitted to the law-making power as to the manner of enforcing these rights; but neither the legislative, nor the executive, nor the judiciary has any power whatever to deprive one accused of crime of the guarantees provided in the Bill of Rights. Still, the Legislature may provide by law for the manner of asserting those rights, and it is believed can punish the person entitled to them, or any of them; and hence, by the law in force both before and after the adoption of the Constitution, the laws enacted by the Legislature provided for the manner of organizing juries for the trial of those accused of crime, regulating the manner of apprising the accused of the nature of the accusation, and furnishing him with a copy thereof, and the like; and it has been expressly provided that " the defendant to a criminal prosecution for any offence may waive any right secured to him by law, except the right of trial by jury, in a felony case." Code Cr. Proc., art. 23 (Orig. Code Cr. Proc., art. 26). The right of a trial by jury cannot be waived in a felony case, and, being guaranteed by the Constitution, has not been impaired by the Legislature. The same may be

said as to an indictment.   The Constitution having required
this as the only mode of charging felonies, the Legislature
could not deprive one accused of crime of that mode of
prosecuting the accusation against him, and this has not
been attempted.   The Constitution not only requires that
felonies shall be prosecuted by indictment, but also requires
that the indictment shall have a certain special form of
commencement and conclusion.   This requirement has not
been interfered with, but has been observed by the Legis-
lature in prescribing the essential requisites of an indict-
ment.   Code Cr. Proc., art. 420, subd. 1, 8.   This consti-
tutional requirement, and particularly the conclusion, it
was held by our Supreme Court, and by this court, the
courts are bound to respect and observe, and could not dis-
regard it, for the reason that an indictment was and is re-
quired by the Constitution to commence in a certain way
and to conclude in a certain way set out in the Constitu-
tion.   In the cases of Cox, Ryan, and Sitterlie, decided by
this court at the last Galveston term, all accessible authori-
ties were carefully examined, and the former rulings of both
the Supreme Court and of this court were supported, and
it was there reaffirmed that the courts could not disregard
a plain constitutional provision, no matter at what stage of
the proceedings the attention of the court was called to the
fact that it had been disregarded, and that it could not be
deemed as having been waived or cured by the verdict.
So far as we are advised, notwithstanding the article of the
Code set out above, the disregard of a plain provision of the
Constitution, and particularly of a right guaranteed to one
accused of crime by the Bill of Rights, has not been held to
have been cured by verdict.   Our remarks, however, must
be understood as applying to the question presented by the
motion for a new trial in the present case, rather than to a
case not before the court.

The causes for which new trials may be granted, as well
as the mode of procedure in relation to new trials, are care-

fully enumerated and set out in the Code of Criminal Procedure, arts. 775 to 784, inclusive.

One of the grounds upon which a new trial may be granted in a felony case is set out in subd. 1 of art. 777, as follows : "Where the defendant has been tried in his absence, or has been denied counsel." And where the court has committed any material error calculated to injure the rights of the defendant. Clause 2, art. 777. When a motion for a new trial is offered, the law has provided that the State may take issue with the defendant upon the truth of the causes set forth in the motion. Art. 781. It does not appear that the State made any attempt to controvert the truth of the causes set out in the motion ; hence we may regard it that the grounds set out in the motion were conceded by court and counsel to be true. Now, inasmuch as the Constitution guarantees the right of a defendant, when accused of crime, to be heard, by himself or counsel, or both, are we to conclude that the defendant had waived the right of being heard by counsel? We are of opinion that, under art. 23 of the Code, the right of the defendant to be heard by counsel could have been waived by the defendant ; but this is not the question. The question is, Did he waive that right? It will not be contended that the record shows affirmatively that he did so. He says in the motion that he was ignorant of the language in which the proceedings against him were being conducted, and was not informed as to what his rights really were.

As we have already seen, in all criminal prosecutions the accused " shall have the right of being heard by himself or counsel, or both," this being one of the rights guaranteed by the Bill of Rights. That it is an important right will hardly be denied. If there be any who would question its importance, if they would look into the history of the progress of this right from the time when, in England, the judge was counsel for the accused, and consider the outrages sometimes perpetrated against life and liberty during those times,

their objections would vanish. It was said with reference to a capital case, in a note by Mr. Cooley (Const. Lim. 331) : " When an ignorant person, unaccustomed to public assemblies, and perhaps feeble in body or intellect, was put upon trial on a charge which, whether true or false, might speedily consign him to an ignominous death, with able counsel arrayed against him, and all the machinery of the law ready to be employed in bringing forward the evidence of circumstances indicating guilt, it is painful to contemplate the barbarity which could deny him professional aid." This argument, it seems, would apply, with force abated, it is true, to the case at bar, where it is shown by the testimony that the accused was but the hireling of the prosecuting witness, the owner of the horses alleged to have been stolen, and for the theft of which he had been put through the forms of a trial and convicted, without having been informed as to what his constitutional rights were, and being unacquainted with the language in which the proceedings against him were being conducted. Says Mr. Cooley : " Perhaps the privilege most important to a person accused of a crime, connected with his trial, is that to be defended by counsel. From very early days," he says, " a class of men who have made the laws of their country their special study, and who have been accepted for the confidence of the court in their learning and integrity, have been set apart as officers of the court, whose special duty it should be to render aid to parties and the court in the application of the law to legal controversies." Illustrative of the importance attached elsewhere to this right of counsel, in *The Commonwealth* v. *Knapp*, 9 Pick. 496, which was a trial for murder, we find it stated that, on the arraignment of J. Francis Knapp, he desired that R. Rantoul, who had recently been admitted an attorney of the Court of Common Pleas, might be assigned as one of his counsel ; but the court refused his request, observing that they had no control over Rantoul as an officer of that court, and adding that it was proper that a person of

more legal. experience should be assigned, who might render aid to the court as well as to the prisoner.

It seems that, whilst in England it was not until after the revolution of 1688 that a full defence was allowed on trials for treason, and not until 1836 that the same privilege was extended to persons accused of other felonies, still, with us, says Mr. Cooley, it is a universal principle of constitutional law that the prisoner shall be allowed a defence by counsel: And, generally, he says, it will be found that the humanity of the law has provided that, if the prisoner is unable to employ counsel, the court may designate some one to defend him, who shall be paid by the government; but where no such provision is made, it is a duty which counsel so designated owes to his profession, to the court engaged in the trial, and to the cause of humanity and justice, not to withhold his assistance nor spare his best exertions in the defence of one who has the double misfortune to be stricken by poverty and accused of crime.   No one, he says, is at liberty to decline such an appointment, and few, it is to be hoped, would be disposed to do so.   Const. Lim. 334.   It has been said that a court has a right to require the service, whether compensation is made or not; and that counsel who should decline to perform it, for no other reason than that the law does not provide pecuniary compensation, is unworthy to hold his responsible office in the administration of justice. C. J. Hale, in Campbell's Lives of the Chief Justices, vol. 2.   With us the law, in addition to the constitutional provisions above referred to, has provided that in capital cases, when the defendant is brought into court for the purpose of being arraigned, if it appears that he has no counsel, and is too poor to employ counsel, the court shall appoint one or more practising attorneys to defend him, and the counsel so appointed shall have at least one day to prepare for trial. Code Cr. Proc., art. 511.   And on an inquiry as to the sanity of a defendant after conviction, if the defendant has no counsel the court shall appoint counsel to conduct the trial

for him.   And in criminal trials before a justice of the peace
the defendant has a right to appear by counsel, as in all other
cases.   Code Cr. Proc., art. 726.   While the provisions of
the Code do not seem to require of the court the appoint-
ment of counsel for a defendant except in capital cases, yet
the practice has been general, so far as our observation has
extended, for the courts to appoint counsel in all cases of
felony, when it shall be made to appear that the defendant
is unable to employ counsel.

But we need not pursue at present this investigation fur-
ther.   The law, in its magnanimity, does not presume that
every one accused of crime is guilty of crime ; on the con-
trary, though solemnly charged by indictment of the grand
jury of having violated the law, even then he enters upon his
trial before the petit jury shielded by the presumption of
innocence, which protects him against conviction until he is
proved guilty beyond a reasonable doubt.   The importance
of the right of having the aid of counsel in conducting his
defence must be apparent to all who have even given the
slightest thought to the subject.

It is not our purpose at this time, nor is it material to a
determination of the present case, that we should attempt to
lay down any definite rules, or make a practical application
of the several provisions of the statutes on the subject of
appointing counsel to represent those who are unable, by
reason of their poverty, to employ counsel to represent them
in trial courts when accused of crime.   The authorities cited
are intended to show, in some degree, the importance which
the law attaches to the right of being heard by counsel on
the trial, in order to have some well-defined idea of their
bearing upon the motion for a new trial on the grounds set
out in the motion.

In view of the facts which appear in the motion, and not
controverted by the State, we are not prepared to say that
the court did not err to the prejudice of the defendant, by
depriving, or rather failing to appoint him counsel to repre-

sent him on the trial, under the peculiar circumstances under which the defendant was placed at the time of the trial; nor are we prepared to say, from the record before us, that the defendant waived his constitutional right to the aid of counsel; nor is there anything set out in the record which calls upon us to infer anything further on the subject than that he had sent his brother for means to enable him to employ counsel. It is true that it does not appear that the defendant asked the court to assign him counsel; but it does appear, with reasonable certainty, that he did not understand the English language, and that whatever intercourse he had with the court was through the aid of an interpreter. Whether an interpreter was appointed for the defendant at his request, or whether he was acting under oath, does not appear. The inference is strong that after the trial he procured the aid of counsel in preparing the motion for a new trial, and under the circumstances we are of opinion that the court erred in permitting the trial to proceed against the defendant without giving him the aid of counsel, and without having informed him as to his legal rights; and, when the motion for a new trial was presented, setting up the facts in detail, and these facts were verified by the affidavit of the defendant, and not controverted by the State, we are of opinion the court should have awarded the defendant a new trial.

Because the District Court erred in refusing to grant the defendant a new trial, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*